UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINITA WALTON,

       Plaintiff,                                CIVIL ACTION NO. 08-13273

       v.                                        DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF                       MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

*A.    Proceedings in this Court*

On July 30, 2008, Plaintiff Tinita Walton (Plaintiff) filed the instant suit seeking judicial review of Defendant Commissioner of Social Security's (Commissioner or Defendant) decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability insurance benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 10, 15). In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's

motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### B.     *Administrative Proceedings*

Plaintiff filed the instant claims on August 2, 2005, alleging that she became unable to work on January 1, 2005 (Tr. at 20, 58). The claim was initially disapproved by the Commissioner on January 10, 2006 (Tr. at 44). Plaintiff requested a hearing and, on July 13, 2007, Plaintiff appeared with counsel at a Video Hearing held before Administrative Law Judge (ALJ) Charles D. Reite, who considered the case *de novo*. In a decision dated January 16, 2008, the ALJ found that Plaintiff was not disabled (Tr. at 28). Plaintiff requested a review of this decision by the Appeals Council on February 7, 2008 (Tr. at 14). The ALJ's decision became the final decision of the Commissioner when, on May 30, 2008, the Appeals Council denied Plaintiff's request for review (Tr. at 4).

## II.    STATEMENT OF FACTS

### A.     *ALJ Findings*

Plaintiff was 34 years of age at the time of her alleged onset of disability (Tr. at 27, 58). Plaintiff's relevant work history included a variety of light- to medium-level skilled and semi-skilled jobs, such as social service aide, case aide, recreation aide, nurse aide and home health aide (Tr. at 27). In denying Plaintiff's claims, the ALJ considered "possible" multiple sclerosis (MS) and depression as potential bases of disability (Tr. at 22).

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had engaged in substantial gainful activity since her alleged disabled date of January 1, 2005 (Tr. at 22). Specifically, the ALJ found that Plaintiff "worked to July 2005 after the

diagnosis of [MS]" (*Id.*). At step two, the ALJ found that Plaintiff's MS and depression were "severe impairments" within the meaning of the second sequential step. *Id*. However, the ALJ noted that Plaintiff's MS diagnosis was only "possible," given that MS had not been "determinatively diagnosed per the medical expert" (Tr. at 22). Notwithstanding the fact that the ALJ found that Plaintiff only "possibly" had MS, the ALJ permitted Plaintiff to proceed past step two. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.*

At step four, the ALJ found that Plaintiff could not perform her previous work (Tr. at 27). However, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform "sedentary work except for 50 to 75% use of the upper extremities, no repetitive or power grasping or torquing, frequent postural activities, no work at extreme temperatures, around vibration or with power tools, mild difficulties in concentration, persistence, or pace, and a need for a sit or stand option" (Tr. at 24). In making this finding, the ALJ noted that Plaintiff's possible MS and depression "could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effect of these symptoms are not credible" (Tr. 25). The ALJ found that Plaintiff was not credible since Plaintiff was able to complete a Masters Degree in Social Work from Michigan State University during the period of claimed disability (*Id.*). At step five, the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy (Tr. at 27-28). Specifically, the ALJ found that Plaintiff could work as a table worker, a charge clerk and/or an order clerk (*Id.*). Accordingly, the ALJ denied Plaintiff's application for disability benefits.

### B.     *Administrative Record*

#### 1.     **Plaintiff's Testimony and Statements**

Plaintiff testified during the hearing that she was unable to work due to fatigue and pain in her legs and back; she estimated that she could sit for 30 to 60 minutes, stand for 15 to 20 minutes and lift a gallon of milk (Tr. 379). She described back and shoulder pain, and claimed that repetitive use of her upper extremities caused her pain (Tr. 381). Plaintiff testified that she does not do any house work and that her husband does all the major chores around the house (Tr. 378). Plaintiff also testified that she is on a number of medications and that her medications cause dizziness, anxiety and drowsiness (Tr. 377). Plaintiff also stated that she takes catnaps throughout the day (Tr. 378).

In regards to her depression, Plaintiff testified that she used to be outgoing, but is now very isolated (Tr. 381). She stated that she doesn't like to be around people, and that she has trouble concentrating on tasks (Tr. 382). Plaintiff also testified that she suffers from headaches, which she claimed would sometimes last for hours (Tr. 382).

#### 2.     **Medical Evidence**

In January 2005, Plaintiff's neurologist Depasish Mridha, M.D., reported a "diagnostic impression" of MS, for which he recommended starting Plaintiff on the preventative medication Copaxone (Tr. 131-32). Dr. Mridha also prescribed medication to help relieve Plaintiff's complaints of fatigue (Tr. 129-30). Sleep testing was also performed to investigate Plaintiff's complaints of fatigue, and revealed significant sleep cycle abnormality, but no sleep apnea (Tr. 127). In May 2005, Dr. Mridha reported that Plaintiff was doing "very well," and tolerating her medications with no side

effects (Tr. 126). In June 2005, Plaintiff returned to Dr. Mridha and complained of "some pain here and there" (Tr. 124). Dr. Mridha prescribed Ultram, but did not order any testing (Tr. 125).

In September 2005, neurologist Daniel Mikol, M.D., of the University of Michigan Multiple Sclerosis Center reported that Plaintiff had experienced a "stroke" in July 1999 (Tr. 172-74). Dr. Mikol stated that Plaintiff "does not have MS," as neither her clinical course nor work up supported such a diagnosis. Dr. Mikol recommended that Plaintiff stop taking the preventative medication (Copaxone) prescribed for MS (Tr. 173). Later that month, Nadeem Siddiqui, M.D. – an occupational medicine specialist – evaluated Plaintiff (Tr. 175-76). At the time of Dr. Siddiqui's examination, Plaintiff was enrolled in a Masters Degree Program (Social Work) at Michigan State University. Dr. Siddiqui believed Plaintiff could perform sedentary work that did not require constant fine motor activity (*Id.*). Dr. Siddiqui further stated that Plaintiff "could engage in work activity including some light typing, answering phone calls, occasional lifting tasks...etc." (*Id.*). In October 2005, Georgia Conic, Ph.D., diagnosed Plaintiff as exhibiting depression and assigned her a local assessment of functioning (GAF) rating of 41-50 (Tr. 180-83).[1]

A state agency physician reviewed Plaintiff's medical records in January 2006 and noted that Plaintiff could preform light-level work in a nonhazardous environment, subject to postural

---

[1] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed. 1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id*. A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*. A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id*.

restrictions (Tr. 184 – 91). Of note, Dr. Nelson's consultation form stated that there was "significant disagreement" in Plaintiff's medical records concerning the etiology of Plaintiff's symptoms (Tr. 193; emphasis in original). Dr. Nelson also stated "I believe U/M [University of Michigan] eval is on target" (*i.e.* the diagnosis that Plaintiff does not have MS) (*Id.*).

In March 2006, Plaintiff's treating physician Gavin Awerbuch, M.D., described Plaintiff as exhibiting "back pain, bilateral carpel tunnel syndrome, fibromyalgia and obstructive sleep apnea" in addition to "possible MS" (Tr. 216). Dr. Awerbuch advised Plaintiff to stop taking the MS medication she had been prescribed (Copaxone). In August 2006, Dr. Awerbuch reiterated his impression that Plaintiff suffers from obstructive sleep apnea, migraines and daytime sleepiness, and prescribed a CPAP machine (Tr. 241). In September 2006, Plaintiff returned to Dr. Awerbuch and reported that she had attempted to wean herself off of Copaxone (Tr. 240). According to Dr. Awerbuch, Plaintiff reported that she successfully stopped using Copaxone for approximately one month, but then her symptoms returned (Tr. 240). Dr. Awerbuch noted that Plaintiff stated that she had "a great deal of leg weakness and was having difficulty with ambulation" (*Id.*). Plaintiff also reported dizziness and increasing pain, and thus resumed using Copaxone. Dr. Awerbuch's impression was that Plaintiff suffered from bilateral carpal tunnel syndrome, fibromyalgia, obstructive sleep apnea and "possible MS" (Tr. 240). In December 2006, Plaintiff again returned to Dr. Awerbuch and reported that "she is doing fairly well" (Tr 239). Dr. Awerbuch stated that Plaintiff "will be interested in physical therapy for her fibromyalgia; however, she does not wish to do this until she has finished with school in the spring" (*Id.*). Plaintiff reported to Dr. Awerbuch that

she was tired, as "[s]he has been doing a lot of hours with her internship program for social work and this has been taking a lot out of her" (*Id.*).

### 3. Vocational Expert

Stephen P. Davis testified at the hearing as a vocational expert. The ALJ asked Mr. Davis whether sedentary level jobs existed that required more than 50 to 70% use of her upper extremities, no torquing or power grasping, no frequent postural activities, no work at extreme temperatures, around vibration, or using power tools, permitted Plaintiff to alternate between sitting and standing at will, and which accommodated mild deficiencies in duration, persistence and pace (Tr. 389-91). Mr. Davis testified that such an individual could perform a significant number of jobs in the regional economy, including work as a table worker, charge or order clerk (Tr. 390-91). Mr. Davis also noted that a significant number of these jobs would allow the employee to alternate at will between standing and sitting (Tr. 391-92). The ALJ's decision stated that – pursuant to SSR 00 – 4P – Mr. Davis' testimony was consistent with the information contained in the Dictionary of Occupational Titles (Tr. 28).

### A. *Parties' Arguments*

#### 1. Plaintiff's Claims of Error

In her motion for summary judgment, Plaintiff raises two claims of error. Namely: (1) whether the Commissioner erred as a matter of law in failing to order further testing and evaluations for MS as directed by the medical expert; and (2) whether the Commissioner erred as a matter of law in not asking the vocational expert (VE) whether his testimony was consistent with the Dictionary of Occupational Titles (DOT), in violation of SSR 00-4p.

As to her first argument, Plaintiff claims that the medical expert testified during the hearing that he could not definitively establish whether or not Plaintiff has MS. Plaintiff points out that the medical expert testified during the hearing that Plaintiff had not undergone a "spinal fluid study, which is the gold standard for diagnosis" of MS (Tr. 371-372). Plaintiff argues that the ALJ denied Plaintiff's application on the basis of the medical expert's testimony, but did not follow through with the medical expert's requests for further testing and evaluations. As to Plaintiff's second claim of error, Plaintiff argues that a remand is required because the ALJ violated SSR 00-4p by not asking the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles.

### 2.     Commissioner's Counter-Motion for Summary Judgment

In response, the Commissioner first argues that the Plaintiff does not identify any error with the ALJ's assessment of her RFC or with the conclusion that she was not fully credible. The Commissioner further notes that no doctor of record described Plaintiff as experiencing greater limitations than those incorporated in the ALJ's assessment of Plaintiff's RFC, and argues that the ALJ's RFC finding is supported by substantial evidence, namely the opinions of Dr. Siddiqui (the occupational medicine specialist who examined Plaintiff in September 2005) and the state agency physician. The Commissioner further points out that the ALJ found Plaintiff not fully credible, in so much as Plaintiff's claimed physical limitations were wholly inconsistent with the fact that she was able to successfully obtain a Master's Degree during the period that she says she was completely disabled.

As to Plaintiff's second claim of error – that the ALJ failed to ask the VE if his testimony was consistent with the DOT – the Commissioner responds that Plaintiff fails to prove that any conflict between the VE's testimony and the DOT actually exists, therefore, no remand is required.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

#### 1. Burden of Proof

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). Benefits "are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers

to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### 2. Substantial Evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

### C.    *Analysis and Conclusions*

Plaintiff's first claim of error – that the ALJ erred by not ordering further medical testing – appears directed more towards step two than any other portion of the ALJ's decision. In other words, Plaintiff appears to be arguing that the ALJ erred by not ordering further testing which would have determinatively diagnosed Plaintiff's possible MS. However, the ALJ found that Plaintiff's "possible MS" did constitute a "severe impairment" for purposes of step two and allowed Plaintiff to proceed to the next steps. In addition, at each subsequent step, the ALJ considered Plaintiff's possible MS-related symptoms. Thus, Plaintiff cannot identify any error at step two of the ALJ's analysis. Moreover, even if the ALJ found that Plaintiff's "possible MS" did not constitute a severe impairment for purposes of step two, the Sixth Circuit has repeatedly held that the Commissioner is not required to order additional examinations to assist a claimant in establishing disability. *See Foster v. Halter*, 279 F.3d 348, 355-356 (6th Cir. 2002); *Moon v. Sullivan*, 920 F.3d

1175, 1183 (6th Cir. 1990); *Landsaw v. Sec. Of HHS*, 803 F.2d 211, 214 (6th Cir. 1986); *Kimbrough v. Sec. Of HHS*, 801 F.2d 794, 797 (6th Cir. 1986).

With respect to step three, the ALJ's conclusion that "[t]he claimant's impairments do not meet or equal the requirements of a listed impairment per the medical expert" (Tr. at 23) is supported by substantial evidence. *See, e.g. Riepen v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 414 (6th Cir. 2006). The medical expert testified that "with the MS diagnosis, there was no spinal tap," and he explained that Plaintiff's proffered symptoms could also be from a (CVA) cerebrovascular accident. Also, a September 23, 2005 report from Daniel Mikol., M.D., Assistant Professor and neurological consultant at the University of Michigan MS Center, rendered a diagnostic impression that Plaintiff "does not have MS." On March 15, 2006, Plaintiff's treating physician, Gavin Awerbuch, M.D., indicated only "possible MS."[2] Since Plaintiff was never conclusively diagnosed with MS, the ALJ's findings at step three are supported by substantial evidence, and the ALJ was not required to order more conclusive testing that Plaintiff could have undergone before the hearing.

Furthermore, the ALJ found that Plaintiff was not credible given that her work records showed that she had earnings of $15,550 in 2005, which the ALJ found inconsistent with Plaintiff's claimed inability to work from January 1, 2005, forward. Additionally, the ALJ noted that Plaintiff was able to complete a Master's Degree program in social work at Michigan State University during the time she alleged that she was disabled, which is also inconsistent with Plaintiff's claim that she was totally disabled. It is well settled that an ALJ's findings based on the credibility of an applicant

---

[2] The ALJ also noted that Nadeem Siddiqui, M.D., Plaintiff's treating occupational medicine specialist, reported on September 27, 2005 that Plaintiff's diagnostic impression was MS.

are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The undersigned finds no reason to disturb the ALJ's credibility findings. Accordingly, the undersigned recommends that Plaintiff is not entitled to relief on her first claim of error.

Plaintiff's second claim of error – that the Commissioner violated SSR 00-4p by failing to ask the VE if his testimony conflicted with the DOT – also does not warrant a remand. Although the ALJ may not have asked the VE whether his testimony conflicted with the DOT, Plaintiff has not suggested that any such conflict actually exists. Furthermore, by testifying as to the frequency of jobs providing a sit/stand option, it appears as though the VE was supplementing information in the DOT, and not providing conflicting information. *See Baranich v. Barnhart*, 128 F. App'x 481, 486, n.3 (6th Cir. 2005) ("[Claimant] is therefore incorrect to argue that the ALJ could not include a sit/stand option when such an option is not indicated in the DOT, as the DOT is only one source to be used in assessing the availability of jobs for the claimant."). Plaintiff has not cited any case law in support of her second claim of error, however, several cases do not support Plaintiff's position. *See Lindsley v. Commissioner of Social Sec.*, 560 F.3d 601 (6th Cir. 2009); *Justin v. Massanari*, 20 Fed. Appx. 158, 160 (4th Cir. 2001) (finding that an ALJ is only required "to address evident discrepancies between a vocational expert's testimony and the [DOT]"); *Brown v. Barnhart*, 408 F. Supp. 2d 28, 35 (D.D.C. 2006) ("Even if SSR 00-4p places an affirmative duty on the [ALJ], such a procedural requirement would not necessarily bestow upon a plaintiff the right of automatic remand where that duty was unmet."); *Justin v. Massanari*, 20 Fed. Appx. 158, 160 (4th Cir. 2001)

(interpreting SSR 00-4p to require the ALJ to address only evident discrepancies, not to uncover such discrepancies). As such, the undersigned recommends that Plaintiff is not entitled to remand on her second claim of error.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Sec'y of Health and Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each

issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

 s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2009

    Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 18, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon